731 P.2d 95

James H. TAYLOR and Barbara G. Taylor, wife, Plaintiffs-Appellees, Cross Appellants,

v.

ARIZONA LAW ENFORCEMENT MERIT SYSTEM COUNCIL, an administrative agency of the State of Arizona; Robert Stuchen, as chairman of the Arizona Law Enforcement Merit System Council; A. Bates Butler, III, as a member of the Arizona Law Enforcement Merit System Council; J.R. Carney, as a member of the Arizona Law Enforcement Merit System Council; State of Arizona; the Arizona Department of Public Safety, an agency of the State of Arizona; Ralph E. Milstead, in his official capacity of Director of the Department of Public Safety, Defendants-Appellants, Cross Appellees.

No. 1 CA–CIV 8222.

Court of Appeals of Arizona, Division 1, Department D.

Aug. 14, 1986.

Review Denied Jan. 6, 1987.

McGroder, Tryon, Heller & Rayes by Douglas L. Rayes, Jane E. Evans, Phoenix, for plaintiffs-appellees, cross appellants.

Robert K. Corbin, Atty. Gen. by David Rich, Asst. Atty. Gen., Phoenix, for defendants-appellants, cross appellees.

## OPINION

BROOKS, Judge.

Plaintiff-appellee James H. Taylor (Taylor) brought an action in the Maricopa County Superior Court (trial court) against the Arizona Law Enforcement Merit System Council (council) and its members, and the Arizona Department of Public Safety (DPS) seeking review of the council's determination to uphold Taylor's termination as a law enforcement officer with DPS. The trial court entered judgment finding that, although some form of punitive action against Taylor was justified, his discharge from employment with the attendant forfeiture of benefits was an excessive penalty and "shocking to the conscience of the court." The matter was remanded to the council with instructions to enter "an appropriate lesser penalty." The council and DPS appeal from this judgment, and Taylor cross-appeals from that portion of the judgment which found that a lesser form of punitive action was justified.

The issues presented by the council and DPS on appeal are as follows:

1. Whether the trial court improperly substituted its own judgment on the appropriate penalty for that of the administrative agency.

2. Whether attorney's fees were properly awarded to Taylor pursuant to A.R.S. § 12–348(A)(3).

Taylor raises the following issues in his cross-appeal:

1. Whether punitive action against him is time-barred by Administrative Rule (A.C.R.R.) R13–5–10(U).

2. Whether he was denied due process of law and a fair hearing before the council by the denial of his access to certain reports, and by the denial of his right to cross-examine and to present witnesses.

3. Whether he was denied due process of law and the right to a fair hearing before the council by reason of the attorney general's dual representation of both DPS and the council.

4. Whether the council's findings were supported by substantial evidence.

## STANDARD OF REVIEW

 In reviewing an administrative agency's decision on a record made before the agency pursuant to the Administrative Review Act, A.R.S. § 12–901 et seq., we review the record to determine whether there has been an unreasonable action which was taken without consideration and in disregard of the facts and circumstances. However, in conducting this review, this court does not weigh the evidence. *Petras v. Arizona State Liquor Board,* 129 Ariz. 449, 631 P.2d 1107 (App.1981). We must affirm the agency's decision if there is any substantial evidence in support thereof, and if the action taken by the agency is within the range of permissible agency dispositions. *Howard v. Nicholls,* 127 Ariz. 383, 621 P.2d 292 (App.1980).

## FACTS

Taylor was a law enforcement officer for over sixteen years until his termination on September 10, 1983. At the time of his termination, he was a sergeant employed in the Investigative Liquor Enforcement Division of DPS, and was assigned to the district encompassing Showlow and Payson, Arizona.

On April 12, 1983, Taylor was in Phoenix on official business. On the same day, while returning to Showlow from Phoenix, Taylor met other law enforcement officers in Payson. He went to two restaurants which served liquor and consumed alcoholic beverages during the afternoon and early evening. Taylor left Payson during a snow

storm, driving a state vehicle, and began radio contact with a Phoenix radio dispatcher. Taylor was subsequently involved in two auto accidents, damaging the state vehicle in the amount of $900.00.

Punitive action against Taylor was commenced by Lt. George Falter, who overheard Taylor's radio transmissions. Falter believed that Taylor sounded intoxicated, and that his unprofessional transmissions discredited DPS. Falter contacted Capts. Ayars and Hoffman and Lt. Bullion the night of April 12, 1983, to complain about Taylor's conduct. On April 19, 1983, Falter submitted a formal written complaint to Ayars.[1] The complaint was forwarded to the Internal Affairs Division (IAD) of DPS for investigation, and an IAD number was assigned and entered upon it on May 2, 1983. Sgt. James Ellis and Officer Cy Gilson were assigned to investigate the incident in early May, 1983.[2] The investigation was completed on July 5, 1983, and the report (the Ellis-Gilson report), was sent to the Complaint Review Board of DPS.[3]

On June 1, 1983, a complaint was filed with DPS against Ellis and Gilson by Sandy Neff, a witness in the Taylor investigation. Neff alleged that the investigators threatened and harassed her, and accused her of lying. In response, IAD commenced an investigation into the conduct of Ellis and Gilson during their investigation of Taylor.[4] Captain Euston Ray and Lt. Dan W. Daniels, Chief of the Internal Affairs Division, were assigned to investigate the Neff com-

plaint and completed their report (the Ray-Daniels report) on July 14, 1983. They concluded that the Taylor investigation had been conducted properly.

On August 17, 1983, DPS requested a 20–day extension of A.C.R.R. R–13–5–10(U), the 120 day limitation for commencing punitive action, for all ongoing Internal Affairs investigations due to violence which had broken out at a copper miners' strike in Morenci, Bisbee and Ajo, Arizona. The request was made by DPS through a telephone call with a member of the council. On August 18, 1983, the council granted a blanket 20-day extension for *all* cases "pending investigation" on or before August 17, 1983.

The Complaint Review Board convened on August 24, 1984 to consider the complaint against Taylor. The board found that the allegations of drunkenness on duty were well-founded and these findings were forwarded to the Director of DPS, Col. Ralph Milstead. After reviewing the investigative reports, interviewing Taylor and the investigators and listening to the tape recording of Taylor's radio transmission on the day in question, Milstead terminated Taylor's employment "effective immediately" on September 10, 1983.

Taylor was notified that his employment had been terminated on the following grounds contained in A.C.R.R. R–13–5–47(C):

---

1. DPS General Order No. 21.01 provides that an employee with firsthand knowledge of misconduct involving a peer or subordinate employee is to verbally notify his supervisor and then initiate an internal complaint by preparing a detailed written report.

2. The types of investigations, the methods of investigation and the files and reports to be maintained are detailed in DPS General Order No. 21.02. The investigation is to include, but is not limited to, interviews with the employee and any witnesses, and the examination of pertinent documents.

3. The complaint review process is outlined in DPS General Order No. 21.03. Following completion of the investigation, the complaint is reviewed by the employee's supervisor. If disciplinary action is recommended, the employee

may request a hearing before the complaint review board.

The complaint review board consists of two employees from supervisory levels, and one employee from the accused employee's peer group. The complaint review board reviews the investigative reports and written statements, hears witness testimony and considers other appropriate evidence. The board renders findings on each allegation, and submits a report to the director of DPS.

4. DPS General Order No. 21.01 also provides a procedure for dealing with complaints made by any person outside the department. All written and any substantial verbal complaints are to be forwarded to IAD for investigation.

3. Misfeasance, malfeasance or nonfeasance which shall include, but shall not be limited to:

\* \* \* \* \* \*

e. Dishonesty or any breach of integrity

\* \* \* \* \* \*

5. Drinking or drunkenness on duty.
6. Excessive intemperance at any time which would reflect discredit upon the agency.

The following facts were set forth in the Notice as the basis for the punitive action:

On April 12, 1983, while claiming duty time, you consumed an excessive amount of alcohol at two different locations in the City of Payson. You then travelled in your state vehicle while under the influence of alcohol and had two accidents while returning home. During an investigation of this matter, you did not truthfully respond to the questions posed to you by your investigators.

On September 9, 1983, Taylor filed a timely Notice of Appeal, pursuant to A.C.R.R. R-13-5-47(F), requesting a hearing before the Merit System Council regarding his termination. On November 15 and 16, 1983, a hearing was held before the council. In its December 5, 1983 decision, the council upheld Taylor's termination. Taylor's "Motion to Review or Rehear Decision of the Council" was denied, and Taylor timely filed an appeal in the trial court.

The trial court considered the pleadings, transcripts, records, memoranda and other matters of record and entered a final judgment finding that Taylor's termination was "shocking to its conscience." The court stated:

... the Court finds that under the facts of this cause, while punitive action is justified, discharge from employment with attended forfeiture of benefits is an excessive penalty and is shocking to the conscience of this Court, the further finding and conclusion of this Court that in all other respects the actions, proceedings and rulings of Defendants were proper and consistent with law, and that the Plaintiffs are entitled to judgment as a matter of law against Defendants and this cause is remanded with the direction that Defendants enter an appropriate lesser penalty, and that Plaintiffs receive their costs and attorneys' fees herein incurred.

The council appeals from this judgment, and Taylor cross-appeals from that portion of the judgment which concludes that a lesser form of punitive action is justified. We deem it appropriate to first consider Taylor's cross-appeal.

## THE CROSS-APPEAL

Taylor first argues that any form of punitive action against him would be time-barred by the failure of DPS to comply with A.C.R.R. R13–5–10(U). The Rule provides:

U. Commencement of Action: Unless otherwise provided for by these rules, no action or proceeding shall be brought by any person having or claiming to have a cause of action or complaint for wrongs or grievances based on or related to these rules or the administration thereof unless such action or proceeding is commenced and served within one hundred twenty days from the date the department has probable cause or after such person discovered or with reasonable diligence should have discovered, such cause of action or complaint.

In 1980, DPS requested a statement of intent and interpretation of A.C.R.R. R13–5–10(U). In response, the council's October 8, 1980 Resolution provided:

NOW, THEREFORE, BE IT HEREBY RESOLVED that the intent of A.C.R.R. R13–5–10(U) is to impose a reasonable maximum time period whereby an employee may be subjected to punitive action.

BE IT FURTHER RESOLVED that the one hundred and twenty day time limitation, expressed in calendar days, generally begins the day following the date an Internal Affairs or Department Report number is assigned to the investigation in question. It is further the intent of

the council to deviate from the afore stated limitations when substantial evidence or circumstances exist where a gross miscarriage of justice would occur through strict interpretation of this rule.

Taylor argues that DPS had probable cause to bring this action on the date of the incident, April 12, 1983, or one week later, April 19, 1983, when the formal written complaint was submitted. If either date advocated by Taylor is used, the 120 day limitation for commencing punitive action against Taylor expired well before he was served with the notice of punitive action on September 8, 1983.

■ Taylor's argument, which presents two alternative dates on which DPS had probable cause, evidences the difficulty in determining on what date "the department had probable cause." Apparently DPS recognized that this rule could be interpreted to indicate several different dates and therefore requested that the council issue a formal interpretation. The council's interpretation states that "generally" one specific date, the day following the date Internal Affairs assigns a number to the investigation, will trigger the running of the 120 day time limitation. We conclude that the 120 day time limitation can reasonably be measured from May 3, 1983. Even if the time is to be measured from this date, however, Taylor argues that the 120 days expired on August 30, 1983, approximately one week before the notice of punitive action was served.

On August 17, 1983, the council granted a 20–day extension of A.C.R.R. R13–5–10(U) for *all* cases "pending investigation" on or before August 17, 1983. Taylor challenges the validity and the applicability of this extension. He argues that the 20–day extension is invalid because it is not specifically authorized by R13–5–10(U). He contends that the council's grant of an extension is the equivalent of an amendment to the rule. Since the proper administrative procedures for amending the rule were admittedly not followed, Taylor argues that the extension is invalid. We disagree.

As the Resolution of October 8, 1980 indicates, under certain circumstances, the 120 day limitation will not be strictly adhered to. It is undisputed that an administrative body has broad discretion in determining whether to grant or deny a motion for a continuance. *Martin v. Industrial Commission*, 120 Ariz. 616, 587 P.2d 1193 (App.1978). However, this discretion must be exercised judiciously, and where this discretion has been abused, with resulting prejudice, the action will not be upheld.

■ In the present case, the extension was granted at the request of DPS. In August, 1983, DPS was actively involved in maintaining order at the scene of a copper miner's strike in Morenci, Ajo and Bisbee. More specifically, on August 10, 1983, the Governor of Arizona declared a state of emergency, and on August 16, 1983 ordered Col. Milstead to provide all necessary support services to law enforcement agencies already in place. Under these circumstances, we find that the council did not abuse its discretion in granting an extension. Since the complaint review process is composed of a series of investigations and reviews, Taylor's case was "pending investigation" on or before August 17, 1983 and was therefore covered by the extension. Furthermore, Taylor has not shown that any prejudice resulted from the grant of the extension.

Taylor next argues that the council improperly denied him access to certain investigative reports and improperly limited his right to cross-examine and present witnesses.

Prior to the administrative hearing before the council, Taylor filed a motion requesting that DPS allow him to inspect the file relating to the internal investigation into allegations made by the witness Neff against DPS investigators Ellis and Gilson. The council instructed its business manager to review the file to determine whether it contained any discoverable material. The business manager concluded that the file did not contain relevant discoverable material that was not otherwise available and Taylor was advised of this decision.

Taylor filed a request for review of this decision pursuant to A.C.R.R. R13–5–10V. The file was then reviewed by a member of the council and the decision not to disclose the contents of the file was affirmed. This ruling was subsequently upheld by the trial court.

■ We first note that we need not determine whether the council improperly delegated this matter to its business manager,[5] since the final decision not to allow inspection of the file was ultimately made by the council. On the merits, we find that the council's decision on the discovery issue did not rise to the level of a denial of due process of law, nor do we find any substantial prejudice to Taylor. At the hearing before the council, Neff herself testified as to the DPS investigators' alleged misconduct during their interrogation and Neff's feelings of coercion and intimidation which resulted therefrom. Further, it is not alleged that Taylor was in any way deterred in his attempts to interview or depose Neff, or any of the other witnesses, prior to the council hearing.

■ Taylor next argues that the council improperly restricted his cross-examination of Neff by not allowing her to testify from a letter which had been written by her attorney, detailing her complaint regarding the conduct of the investigating officers. We find no abuse of discretion since the letter was not written by Neff nor was it signed by her. She was not restricted in utilizing her own independent recollection in testifying as to the events referred to in the letter.

■ Taylor next contends that he was denied a fair hearing by not being allowed to present the testimony of DPS officer Herbert Brigham as to his opinion of how an investigation should be conducted. Brigham had reviewed the same evidence that was presented to the director, and was prepared to testify that the investigation had not been conducted objectively and

that the director's decision was therefore inappropriate. We summarily dispose of this issue by concluding that the council clearly did not abuse its discretion by excluding this testimony. Brigham was permitted to testify as to his working relationship with Taylor and as to Taylor's good character. However, Brigham's testimony as to how he would have conducted the investigation was irrelevant.

As his final issue in the cross-appeal, Taylor argues that he was denied the right to a fair hearing by the attorney general's dual representation of both DPS and the council. Prior to the hearing, Taylor filed a motion to disqualify the attorney general's office from representing DPS since the attorney general also serves as legal advisor to the council. This motion was denied. In effect, Taylor argues that DPS should have been required to engage a private attorney. We disagree.

■ The attorney general is compelled by statute to represent all state agencies. A.R.S. § 41–192.A(1) provides that the attorney general is required to "be the legal advisor of the departments of this state and render such legal services as the departments require." Therefore, it is the intent of the legislature that the attorney general represent both DPS and the council in appropriate circumstances.

■ A conflict of interest would clearly arise if the same assistant attorney general participated as an advocate before the council and simultaneously served as an advisor to the council in the same matter. If the council had requested the advice of the attorney general during the pendency of this action, it appears to be conceded by the parties that the request would have been directed to the solicitor general who would designate an assistant attorney general from a division other than that to which the advocate is assigned to act as an advisor to the council. In the present case, however, the council did not ask the attorney general for the services of a legal

---

**5.** See A.C.R.R. R13–5–104(C) which provides for the delegation of certain board functions to the business manager.

advisor. The Assistant Attorney General, Aileen Lee, was appearing as an advocate for DPS and not as a legal advisor.

Taylor argues, however, that Lee in fact acted as an advisor to the council during these proceedings. He refers to an alleged *ex parte* communication between Lee and a member of the council concerning the standard to be applied by the council in weighing the evidence. We believe that sufficient evidence was presented from which it can be concluded that no *ex parte* communications transpired and that Lee was acting as an advocate, not an advisor. In that regard, before closing arguments, a council member requested that *both* parties address the issue of "burden of proof." Lee offered to provide the council with case law after research on the subject. Taylor's attorney offered to submit a brief, but the council member indicated that he did not necessarily want a brief. Several weeks later, Lee provided a memorandum to the council members, with a copy to Taylor's attorney.

On these facts, we do not conclude that Lee's legal memorandum constituted an *"ex parte* communication" with the council member nor do we find that, in presenting this memorandum, Lee was acting as a legal advisor to the council rather than an advocate for DPS. We note that Taylor's attorney later filed a legal memorandum in response to that filed by Lee.

## SUFFICIENCY OF THE EVIDENCE

In its appeal, the council contends that the trial court improperly substituted its judgment for that of the council when it concluded that termination of Taylor's employment by DPS was so disproportionate to Taylor's misconduct as to be "shocking to the conscience." We agree.

Arizona Revised Statute § 28–235 and the rules enacted pursuant thereto, vest wide discretion in the council to determine when violation of its rules is sufficient to justify termination, as opposed to some lesser disciplinary action. *Ariz. Dept. of Public Safety v. Dowd,* 117 Ariz.

423, 573 P.2d 497 (App.1977). The determination of the penalty imposed by an administrative body will not be disturbed unless there has been a clear abuse of discretion. *Bishop v. Law Enforcement Merit System Council,* 119 Ariz. 417, 581 P.2d 262 (App. 1978).

In *Bishop,* the court reviewed the charges against the appellant, and concluded that the continuance of his employment could have been detrimental to the discipline and efficiency of DPS in satisfying its statutory law enforcement obligations. Bishop, a former undercover police officer, was dismissed for smoking marijuana with narcotics suspects and failing to report the same. The court found that there was a rational basis for the council's conclusion that termination was justified by the violations of the council's rules, and that the punishment was not so disproportionate to the offense as to be shocking to one's sense of fairness. The court in *Bishop* rejected appellant's attempt to show that similar acts had not been disciplined in the past, or if they had, that the punishment was much less severe, noting that the council is not bound to deal with all cases at all times in the same manner as it had dealt with some past cases that might seem comparable.

So too in the present case, the council as the trier of fact, concluded that Taylor's actions constituted cause for discipline or discharge pursuant to A.C.R.R. R13–5–47(C). Considering the evidence in the light most favorable to upholding the council's decision, there was evidence that Taylor had consumed up to sixteen mixed drinks the afternoon and evening of April 12, 1983, and that he was too intoxicated to drive. He had two accidents in a state-owned vehicle, made radio transmissions with noticably slurred speech and did not know which road he was driving on.

DPS Director Milstead testified as to how and why this particular punitive action was taken against Taylor:

Q. Could you explain to the Council why you decided to terminate Sergeant Taylor based on your review of the package?

A. [Col. Milstead] Simply stated, I was convinced, after going through a review of the package, the reports, of listening to the tape, of talking to the investigators, of talking to Sergeant Taylor, that when he was operating the vehicle that evening that he was, in fact, drunk.

\* \* \* \* \* \*

In listening to the tape—and I listened to it several times—and as I listened to it I could hear a man whose faculties were, in fact, severly impaired as far as speech. Not only speech patterns, but what he said specifically, the conduct on the tape, and then not knowing where he was when, in fact, that was his area.

\* \* \* \* \* \*

Q. ... One of the allegations in the punitive action related to dishonesty or breach of integrity. What was it in the package, the information that you received, that led you to believe that he had been dishonest or breached his integrity?

A. The issue was whether or not he was on duty the afternoon that he was drinking, in fact, was spending State money to drink with, had claimed overtime for that day when it did not appear that he had any reason to legitimately be in that particular bar drinking with those people who knew who he was.

Q. Could you outline more clearly why you felt he had no reason to be there?

A. Well, if he is, in fact, undercover, he's ineffective if the people there know who he is, and you cannot drink on duty unless it facilitates the case you are working. And there would be absolutely no reason for him to drink on duty to facilitate a case when the people knew who he was.

Now, he had made a comment that he was ready to take action if the juveniles were to come in. Well, that was no reason for him to drink; and, in fact, there wasn't—you know, he could have been there if—he could have said if robbers had come in or something like that. That wasn't a reason to be drinking.

\* \* \* \* \* \*

Q. .... did you also have some concern with regard to potential liability?

A. Well, there were a lot of reasons why I chose dismissal as the appropriate form of punishment, and liability was one of them.

There is a serious liability question for the department, for myself, if, after I have information that a person has, in fact, been involved in drinking and driving, that if they are retained in the position where that could happen again, and I can forsee that, and if that would have been shown that I could have forseen what it could do, then I do have that problem.

Taylor contends that punitive actions taken against other officers who had been driving while under the influence is strong evidence that termination in his case was excessive and disproportionate to the offense charged. Taylor cites several instances in which officers charged with misconduct similar to Taylor's were not terminated and the punishments imposed were significantly less severe. As this court noted in *Bishop*, the council is not obligated to deal with all cases that might seem comparable in the same manner. *Bishop*, 119 Ariz. at 422, 581 P.2d at 267. As Milstead testified, DPS has taken a strong stand against drinking and driving. Therefore, if Taylor's conduct warranted dismissal, the fact that other officers might have received less severe sanctions in the past would not necessarily render Taylor's termination "shocking to the conscience."

A.C.R.R. R13–5–47(C) sets forth the "causes" justifying discipline or discharge of an employee. As this court has recognized,

> [I]n a police employment setting, there is a substantial relationship to the end sought to be accomplished, and a rule stating cause for dismissal is thus not arbitrary, when the proscribed conduct constitutes a substantial shortcoming which renders the continuance of the officer in his position detrimental to the discipline or efficiency of the service.

*Dowd*, 117 Ariz. at 429, 573 P.2d at 503.

■ The council, as the trier of fact, concluded that the violations alleged

against Taylor and his continued employment could have been detrimental to the discipline or efficiency of DPS. The council's decision was supported by substantial evidence, and the trial court should have affirmed that decision on review.

## ATTORNEY'S FEES

Since the judgment of the trial court is reversed to the extent that it held that Taylor's termination was an excessive penalty, Taylor is not a prevailing party entitled to attorney's fees pursuant to A.R.S. § 12–348(A)(3). Accordingly, we reverse the award of attorney's fees.

## CONCLUSION

We hold that the punitive action taken against Taylor is supported by substantial evidence, and that the trial court improperly substituted its judgment for that of the council. We affirm the trial court's findings that the punitive action was timely taken, and that Taylor's due process rights were not violated. We otherwise reverse the judgment of the trial court and the order of remand to the council is vacated.

This matter is remanded to the trial court with directions to enter judgment affirming the council's decision.

GRANT, P.J., and FROEB, J., concur.