772 P.2d 595

**TURF PARADISE, INC., an Arizona corporation, Plaintiff/Appellant,**

v.

**ARIZONA RACING COMMISSION, an agency of the State of Arizona, Arizona Department of Racing, an agency of the State of Arizona, and the State of Arizona, Defendants/Appellees.**

No. 2 CA–CV 89–0011.

Court of Appeals of Arizona, Division 2, Department B.

April 13, 1989.

Jennings, Strouss & Salmon by David L. White and Jefferson L. Lankford, Phoenix, for plaintiff/appellant.

Robert K. Corbin, Atty. Gen. by Michael N. Harrison, Keith R. Ricker and Katherine L. Mead, Phoenix, for defendants/appellees.

## OPINION

FERNANDEZ, Judge.

Appellant Turf Paradise, Inc. appeals from a superior court judgment affirming a decision of appellee Arizona Racing Commission. Turf Paradise contends the Commission had no authority to issue its horse racing permit subject to the condition that Turf Paradise not require any person entering the restricted area of its grounds to sign a waiver of liability agreement. Turf Paradise also contends the Commission acted arbitrarily and capriciously in granting it a one-year permit rather than a three-year permit. In addition, it argues that the Commission's hearing procedures were unfair and violated due process. We affirm.

In December 1986, Turf Paradise filed an application to renew its then three-year

permit that was due to expire in mid–1987. In April 1987, the Commission voted to hold a hearing on the application. That hearing was held before a Department of Racing hearing officer on May 1, 1987. The hearing officer recommended that Turf Paradise be issued a permit once it met the statutory requirements. The hearing officer's findings noted that Turf Paradise did not then have a liability insurance policy in effect but that Turf Paradise had indicated it would require a waiver agreement from all persons seeking to enter the backside of the track when it did obtain a policy. The hearing officer recommended that the waiver agreement proposal be studied further and that its effect on the state's liability exposure be examined. The Acting Director of the Department then recommended that Turf Paradise be granted a one-year permit conditioned on the requirement that no one sign a waiver agreement. That recommendation was adopted by the Commission at its meeting on May 12, 1987.

After Turf Paradise requested a rehearing, a new hearing was held before a different hearing officer on July 30, 1987. That hearing officer recommended that the Department and the Commission consider the best interests of racing in Arizona and that the permit include a condition of no waivers. The hearing officer also stated: "Without specifically recommending that a three year permit be granted, IT IS RECOMMENDED that the Director and the Commission consider the consensus of the witnesses called by Counsel for Turf Paradise, Inc., testifying that a longer permit is helpful to them in preparing for racing meets in Arizona." The Acting Director again recommended that the Commission issue a one-year permit conditioned upon the absence of a waiver requirement. The Commission voted to issue just such a permit on August 25, 1987.

Turf Paradise sought judicial review in superior court shortly thereafter. This appeal followed the trial court's affirmance of the Commission's decision. We note, pursuant to a motion to supplement the record, that in June 1988, the Commission voted to renew Turf Paradise's permit for a period of three years and that no conditions were imposed upon that permit. Despite the fact that the permit upon which this appeal is brought has expired, however, we exercise our discretion to determine the issues raised. *Seeley v. State,* 134 Ariz. 263, 655 P.2d 803 (App.1982). The questions are such that they are likely to recur. *Fraternal Order of Police Lodge 2 v. Phoenix Employee Relations Board,* 133 Ariz. 126, 650 P.2d 428 (1982). In addition, a one-year permit is of such relatively short duration that appellate review may be thwarted, as in this case, by expiration of the permit if the doctrine of mootness is applied. *Maricopa County Health Department v. Harmon,* 156 Ariz. 161, 750 P.2d 1364 (App. 1987).

## ONE–YEAR PERMIT

Turf Paradise contends the Commission abused its discretion in granting it a one-year permit rather than the three-year permit it requested. It argues initially that the decision was inconsistent with the past practice of granting three-year permits and that the Commission acted arbitrarily by failing to articulate a substantial reason for the change. A.R.S. § 5–108(D) provides that "permits shall be renewed for successive periods of not more than three years...." From 1949 until the current statute was amended in 1982, horse racing permits were issued for periods of one year. 1949 Ariz.Sess.Laws, ch. 61, § 6; 1982 Ariz.Sess.Laws, ch. 310, § 7. Turf Paradise was previously issued a three-year permit in mid–1984 that expired in mid–1987. Because the 1982 amendment permitting three-year permits did not become effective until September 30, 1982, Turf Paradise could not have had a three-year permit before it obtained its 1984–87 permit. Thus, the record does not support its claim that the Commission's decision was a departure from its own past practices.

Turf Paradise next contends that the Commission, in voting to issue a one-year permit, relied upon *"post hoc* rationales" which were arbitrary and not sup-

ported by substantial evidence. A.R.S. § 5–108(D) provides that permits may be renewed for a period "of *not more than three years*" (emphasis added). That language indicates a legislative intent that the Racing Commission determine whether it will grant a one-year, two-year or three-year permit. We must, therefore, determine whether there was substantial evidence to support the Commission's decision to issue a one-year permit to Turf Paradise. *DeGroot v. Arizona Racing Commission,* 141 Ariz. 331, 686 P.2d 1301 (App.1984).

The record shows that the Commission was concerned both about its communications with Turf Paradise as well as Turf Paradise's claims of difficulty in obtaining insurance coverage that had resulted in its proposal to require waivers. The Commission was also concerned about the state's exposure to liability because of testimony at the original hearing that the state is always joined as a party whenever Turf Paradise is sued for negligence. In addition, the record indicates that one of the commissioners who voted at the August meeting was newly appointed, and comments were made at the time of the Commission's first vote that one or more of the commissioners were new to the job. We find substantial evidence to support the Commission's decision to issue a one-year permit.

## CONDITIONAL PERMIT

■ Turf Paradise also contends that the Commission had no authority to issue a permit conditioned upon its not requiring everyone entering the backside of its track to sign a waiver of liability agreement. As Turf Paradise notes, A.R.S. § 5–104, which authorizes the Commission to approve permits, does not specifically authorize the imposition of conditions upon a permit. As a result, it argues that the Commission has authority only to grant or deny a permit and that it cannot impose conditions upon its permits requiring a permittee to perform an act unless a statute or regulation specifically requires the permittee to per-

form it. We note that the condition imposed by the Commission does not require Turf Paradise to perform an act. Instead, it prohibits it from utilizing waivers.

Turf Paradise contends it was improper for the Commission to make the permit conditional absent an express statutory or regulatory authorization for such a condition. In support of that contention, Turf Paradise has cited *Arizona Downs v. Turf Paradise, Inc.,* 140 Ariz. 438, 682 P.2d 443 (App.1984). In that case, Turf Paradise argued that the Commission had properly imposed, as a condition on a permit issued to Arizona Downs, a requirement that it pay Turf Paradise a specific percentage of the annual maintenance expenses for Turf Paradise's premises. Because that requirement ignored an existing contract between Arizona Downs and Turf Paradise that required Arizona Downs to pay a smaller sum to cover maintenance expenses and because there was no indication that the track was not being adequately maintained as required by the applicable regulation, the court held that the Commission's order was arbitrary and capricious and that it violated Arizona Downs' contractual rights.

Although no regulation is involved in this case, a statutory authorization does apply. The Commission is authorized, inter alia, to refuse to renew a permit upon a showing that the applicant "[h]as entered into any contract or contracts which will not further the best interests of racing or be in the public interest...." A.R.S. § 5–108(A)(1)(*i*). Although Turf Paradise had not yet procured its liability insurance policy at the time of the proceedings at issue,[1] it informed the hearing officer and the Commission that any policy it purchased would require that persons entering the backside sign a waiver. The pertinent portions of the proposed waiver, which was admitted into evidence at the rehearing, read as follows:

FOR VALUABLE CONSIDERATION, including but not limited to permission by Turf Paradise, Inc. for the undersigned to use the Turf Paradise track

---

1. Turf Paradise normally purchases an insurance policy shortly before the start of the racing season. In 1987, the season was scheduled to begin October 2.

and facilities and the waiver by Turf Paradise, Inc. of a surcharge against the undersigned for the increased cost of liability insurance, ... the undersigned hereby releases, waives and forever discharges any claim or indebtedness, direct or indirect, current or contingent, past, present or future, which the undersigned might otherwise assert against Turf Paradise, Inc.... arising out of any past, present or future transaction, occurrence, act or omission preceding and succeeding execution and delivery of this Release and Indemnity Agreement ... for the undersigned's use of any facility provided to the undersigned by Turf Paradise.

*    *    *    *    *    *

The undersigned acknowledges and understands that this Agreement covers claims arising out of or connected with not only past or present matters described herein, and of occurrences which the undersigned may not know or suspect to exist in his favor at the time this Agreement is executed and which, if known by the undersigned, might have affected this Agreement, but also covers any future claims which the undersigned does not know or suspect to exist at this time, and which may occur or arise in the future.

The undersigned further agrees to indemnify and hold harmless Turf Paradise from any and all liability, costs, damage, expense, and attorneys' fees whatsoever that may be sustained or incurred by Turf Paradise as a result of permitting the undersigned to use the Turf Paradise facilities.

Turf Paradise's president testified at the original hearing that the waiver would be required of all persons coming to the backside of the track, including visitors, trainers, horseshoers, veterinarians, owners, purveyors of goods to the track and jockeys. Yet, at both the rehearing and the subsequent Commission meeting when lengthy discussions were held with regard to Turf Paradise's difficulty in obtaining insurance, the evidence was that Turf Paradise was unable to obtain coverage unless participants were excluded from coverage. An insurance agent explained that the term "participants" meant jockeys. Thus, Turf Paradise proposed to require waivers far beyond that required by any of the carriers from which it had sought coverage.

Pursuant to A.R.S. § 5–104, the Racing Commission is authorized to "protect and promote public health, safety and the proper conduct of racing and pari-mutuel wagering and any other matter pertaining to the proper conduct of racing within this state." At the Commission meeting held in August 1987 after the rehearing, a commissioner inquired of Turf Paradise's president what insurance coverage there could be in light of such an extremely broad waiver. After some discussion, the president stated it would protect Turf Paradise's assets. There were also statements that neither the waivers nor the insurance coverage would apply to the state.

"The power to approve implies the power to disapprove and the power to disapprove necessarily includes the lesser power to condition an approval." *Southern Pacific Co. v. Olympian Dredging Co.*, 260 U.S. 205, 208, 43 S.Ct. 26, 27, 67 L.Ed. 213, 216 (1922).

[A]s a general rule, the state, having power to deny a privilege altogether, may grant it upon such conditions as it sees fit to impose. But the power of the state in that respect is not unlimited, and one of the limitations is that it may not impose conditions which require the relinquishment of constitutional rights.

*Frost v. Railroad Commission*, 271 U.S. 583, 593–94, 46 S.Ct. 605, 607, 70 L.Ed. 1101, 1104–05 (1926). In light of the Commission's specific statutory authorization to deny a permit because the applicant has entered into a contract which will not further the best interests of racing, the sweeping nature and proposed application of the contemplated waiver and the fact that the condition was imposed in connection with a one-year permit, we find that the Commission had authority to impose a condition on Turf Paradise's permit that no person entering the backside of the track be required to sign a waiver agreement. We also find,

under the facts of this case, that the Commission's order was neither arbitrary nor capricious.

### UNFAIR HEARING PROCEDURES

■ Turf Paradise contends that the rehearing before the hearing officer was unfair, arguing that the hearing officer was not impartial. Turf Paradise contends that the impartiality of the tribunal was impugned by extensive or adversarial questioning by the hearing officer, claiming that he actually engaged in cross-examination of the witnesses rather than questioning them in order to elicit the truth. In *Kosik v. Industrial Commission*, 125 Ariz. 535, 611 P.2d 122 (App.1980), the tribunal's impartiality was found to be suspect because the hearing officer asked nearly half the questions asked in the entire hearing and because his questions were confusing and misleading as well. No such facts exist in this case. The transcript of the rehearing covers 225 pages. The questions asked by the hearing officer cover only 16 pages of that transcript. The hearing officer questioned only three of the seven witnesses who testified. We find no lack of impartiality by the hearing officer.

Additionally, Turf Paradise contends that the rehearing violated due process, claiming that it was not given notice and an opportunity to address matters on which the director and the Commission ultimately based their decisions. Turf Paradise specifically points to the issue of the statutory requirement for Arizona-bred horse races, about which the assistant attorney general asked three questions during cross-examination of one of Turf Paradise's witnesses. One of the questions asked was a hypothetical question. Turf Paradise contends the issue was improperly raised because it was not mentioned in the Commission's rehearing order. After a lengthy redirect examination on that issue alone, Turf Paradise's counsel then objected to injection of the issue in the rehearing. The hearing officer responded that he was aware it was not an issue in the proceedings. However, because of a subsequent exchange with the assistant attorney general, Turf Paradise then questioned its witnesses at length about the issue, despite several offers by the assistant attorney general to stipulate to their testimony on the issue. In his findings and recommendation, the hearing officer noted that it was not an issue in the rehearing and he made no finding on the issue. In the director's modification of the findings, he noted that the issue involved a statutory requirement that the Commission was authorized to waive under certain circumstances. The issue had also been before the Commission for a number of months, having appeared on the agenda along with Turf Paradise's permit application in both the April and May Commission meetings. The April agenda indicated the issue had been continued from the Commission's December 1986 meeting. The Commission is not required to consider an issue in a vacuum. Contemporaneous matters involving the same permittee are pertinent to a determination of an application for a permit renewal. We find no merit to Turf Paradise's argument that it had no notice and no opportunity to address the issue. Substantial evidence on the issue was presented both to the rehearing officer and to the Commission by Turf Paradise itself.

Additionally, Turf Paradise contends the rehearing was unfair because the lawyer who represented the Department and the Commission at the rehearing assumed an adversarial role, cross-examined Turf Paradise's witnesses and filed an adversarial memorandum prior to the rehearing. We note that during the final Commission meeting in these proceedings, the assistant attorney general indicated that he was the legal advisor to the Commission. In the memorandum he filed, he indicated he was the attorney for the Department of Racing. Yet, in the hearing before the superior court, he stated as follows:

> The brief which I filed was not filed by the Department, it was filed by the Arizona Attorney General's Office as adversaries [sic] to the Department and to the Commission; it was filed in an attempt to get the hearing officer and get the Department and the Commission that law which would allow them to make an informed decision, and, your honor, I

would submit and argue forcibly that is my job.

I am not a representative of the Commission or the Department, unless I tell them what the law is, and on the particular administrative hearings I chose to file briefs so you could have a look, in front of this, at the case law and statutes.

In *Taylor v. Arizona Law Enforcement Merit System Council*, 152 Ariz. 200, 731 P.2d 95 (App.1986), a case neither party cited in connection with this issue, Division One of this court observed that "[a] conflict of interest would clearly arise if the same assistant attorney general participated as an advocate before the council and simultaneously served as an advisor to the council in the same matter." 152 Ariz. at 206, 731 P.2d at 101. We note that the assistant attorney general appeared as an adversary at the rehearing and as an advisor during the Commission meeting. We are concerned, however, with the lawyer's inconsistent representations as to his role in the matter.

Because of the conclusions we have previously reached and because of the layers of administrative proceedings that existed in this case, we find no prejudice to Turf Paradise in the attorney's conduct. We are concerned, however, that such inconsistent representations as to the attorney's role raise the potential for either a conflict of interest or the appearance of impropriety and suggest that the procedures be reviewed.

The judgment upholding the Commission's decision is affirmed.

ROLL, P.J., and LACAGNINA, C.J., concur.