[Civil No. 4293. Filed March 10, 1941.]

[111 Pac. (2d) 57.]

JOE KEITH, Appellant, v. CIVIL SERVICE BOARD OF THE CITY OF PHOENIX, Appellee.

Mr. V. L. Hash, for Appellant.

Mr. Hess Seaman, City Attorney, and Mr. William C. Fields, Assistant City Attorney, for Appellee.

McALISTER, J.—This is an appeal by Joe Keith from a judgment of the superior court affirming an order of the civil service board of the City of Phoenix which sustained the action of the chief of police of that city in dismissing him from the position of patrolman in the city's police department.

According to the record the chief of police of the City of Phoenix dismissed him from the service on November 16, 1938, and on November 19, 1938, caused to be served upon him and also filed with the civil service board of the city the following order:

"For the reasons stated below, you are hereby dismissed from the position of Patrolman in the Depart-

ment of Police, effective upon service. Reasons for dismissal:

"Incompetent and inefficient in the performance of duty; conduct unbecoming an officer and guilty of annoying his superiors through non-payment of just debts.

> "Dave W. Fountain
> "Head of Department
> "Chief of Police"

The petitioner answered a few days later denying the charges and at the same time requested a hearing before the civil service board of the City of Phoenix. On November 29, 1938, he asked for a specification of the various acts of commission and omission relied upon to constitute the charges, and on November 30, 1938, this was furnished him. It was in the following language:

"Reasons for dismissal:

"Incompetent and inefficient performance of duty; improper and unlawful performance of duty; conduct unbecoming an officer; failure to pay just debts causing annoyance to superiors because thereof, particulars thereof being:

"1. During month of November, 1938, while acting as jailer in city jail, you failed to keep proper and intelligible record of the perfomance of your duties as jailer;

"2. During month of November, 1938, while acting as jailer in city jail, you failed to properly account for property of prisoners which came into your custody;

"3. During month of November, 1938, while acting as jailer you failed to properly lock tank number three, the safety door being left open, the safety latch on the outer door being left open, and the door entering into the tank from the jailer's office being left open;

"4. During month of November, 1938, while acting as city jailer, you were under the influence of intoxicating liquor while on duty on various occasions;

"5. For a long period of time last past you have been under the influence of intoxicating liquor while on duty.

"6. For a long period of time last past you have failed to pay your just debts causing numerous complaints from your creditors to your superiors;

"7. During the month of October, 1938, you were guilty of conduct unbecoming an officer toward a woman;

"8. During the month of April, 1937, you failed to truthfully report the facts concerning the attempted arrest and death of Rudolph Blanco.

"9. During the month of October, 1937, you took a book of parking permits for commercial vehicles from your superior officers without their consent or knowledge and after being confronted and charged therewith, admitted taking same, and returned the book, but still secretly kept four of the permits which were later obtained from you.

"Dave W. Fountain<br>
"Head of Department<br>
"Chief of Police"

The petitioner demurred to the sufficiency of each of these specifications, but the record does not disclose that the board took any action thereon. Evidently the demurrer was treated as overruled, because on July 19, 1939, the matter proceeded to a hearing at which some twenty-five witnesses were examined. Testimony supporting each of the charges was introduced though to justify the action of the board in dismissing the petitioner it was not necessary that all of them be established. Appellee calls particular attention to the evidence supporting the charge of frequently drinking liquor and at times being under its influence in 1938, while on duty; of taking advantage of his position as an officer to buy meals and liquor from the Pure Food Cafe and failing to pay for them; of conduct unbecoming an officer toward a woman in that late in October, 1938, about 10:30 A. M., while in uniform, he went into the Pure Food Cafe, ordered a cup of coffee from Ruth Belfils, a young married woman employed there, and, after being

served, handed her a small package wrapped in paper, saying as he did so, "This is something to remember me by." As she started to open it, he remarked, "Don't open it here," whereupon she took it to the back room and found it contained a "rubber condom, which was all wrinkled up, dirty and all unrolled." She was shocked and hurt by this conduct, because she had always served the police officers and considered them gentlemen. Appellee points out also that the petitioner himself admitted violation of the rules by writing the chief of police a letter under date of April 25, 1939, in which he stated, among other things, the following:

"I am hereby applying to you for an opportunity to prove to you that I have entirely quit the use of all intoxicating liquors and that I can do good work and if permitted over a period of months, I can prove to the satisfaction of the captains and yourself that I am permanently off of drink, both on and off of duty."

On August 14, following the hearing, the civil service board entered an order that "the dismissal of Joe Keith made on November 22, 1938, be sustained." No appeal to the courts lies from the action of the civil service board, so the petitioner took the case to the superior court of Maricopa County on a writ of *certiorari* and the judgment of that court was "that the proceedings below of the Civil Service Board of the City of Phoenix in the matter of the dismissal of Joe Keith be affirmed."

The petitioner contends that in quashing the writ of *certiorari* the court committed error. There was no order quashing the writ and no reason why one should have been made. The writ merely directed the civil service board to file with the superior court the record made by it in the case and when this was done the purpose of the writ had been accomplished. We take it, however, that what the petitioner meant is

that the court exceeded its jurisdiction in entering the order of affirmance and will so treat it. He points out three reasons why this is true. First, because the board did not make a finding of guilty or not guilty of any of the charges set out in the specifications; second, because the order of dismissal by the chief of police on November 16, 1938, did not contain specific charges or set forth clearly their nature so the petitioner could answer them; third, because the board admitted letters and statements constituting hearsay evidence and thus denied the petitioner his constitutional right to face his accusers.

██ The contention that before the civil service board may sustain an order of dismissal by the chief of police it must specifically find the person guilty of one of the charges against him, as though he were being prosecuted for a criminal offense, is without merit. The procedure by which an employee of the City of Phoenix is removed from its service is prescribed in the "Rules of the Civil Service Board of the City of Phoenix" and in determining whether the board acted within its jurisdiction in affirming or revoking an order of removal or suspension, etc., the court looks for guidance to the rules of the civil service ordinance and not to those prescribed for a criminal prosecution. The tenure of every employee under that ordinance is during good behavior (section 1, rule 8, Rules of the Civil Service Board) but this section provides further that any such person may be "removed, demoted or suspended without pay or with reduced pay, etc." for any one of a number of thirteen causes. So when an order removing, demoting or suspending an employee for acts constituting one or more of these causes is made by the proper person, in this case the chief of police, and filed with the civil service board, a copy thereof being served upon the employee,

and an appeal from such order is taken by him to the board, section 5 of rule 8 provides what action the board shall take. It reads:

"Time for Hearing: The Board shall, within two weeks from the filing of said appeal commence the hearing thereof, and shall, without delay, fully hear and determine the matter and either affirm, modify or revoke such order."

██ In entering its order sustaining removal the board necessarily acted under this provision, and there is nothing in it or elsewhere in the ordinance providing that the board shall first find the employee guilty or not guilty of the charge before affirming, modifying or revoking the order of dismissal. While the procedure by which this conclusion is reached is substantially that governing courts of record, it is clear from the following language of section 6, rule 8 of the civil service ordinance that in the conduct of the hearing the board is not bound by technical rules of evidence and that no informality in the proceedings or in the matter of taking evidence will invalidate any order or decision of the board:

"Conduct of Hearing: The appellant shall be entitled to appear personally, produce evidence, and to have counsel and a public hearing. The appointing authority may also be represented by counsel. All hearings and investigations before the Board shall be governed by these rules of practice and procedure; and in the conduct thereof, the Board shall not be bound by technical rules of evidence, nor shall informality in any of the proceedings, or in the matter of taking testimony invalidate any order, decision, rule or regulation made, or approved by the Board."

██ The board did not state in its decision which of the nine causes set up in the specifications it found the petitioner had violated but, inasmuch as the evidence before it was such that it could have decided

this was true of each of them, it was not necessary that it say in its decision more than that the order of dismissal was sustained. The cases cited by petitioner holding that the board must make a specific finding of guilty before entering its order sustaining dismissal are not in point since neither the facts of the case nor the civil service rules involved are the same as we are dealing with here. If, in its mind, the evidence supports only one or more of the charges, the board was still within its rights in sustaining the order of dismissal, because the hearing before it was an original one and its investigation was full and complete.

The petitioner contends further that the court erred in holding that the board did not exceed its jurisdiction because the order of dismissal by the chief of police on November 16, 1938, did not contain specific charges or set forth their nature so he could answer them. After the order of the chief of police had been served on him, he requested specification of the various acts relied upon to constitute the charges and these were furnished him. Any objection, therefore, that the original order of dismissal was not sufficiently specific in its charges was completely overcome by the filing, at petitioner's request, of the specifications.

The final contention is that the board exceeded its jurisdiction because it admitted in evidence letters and statements constituting hearsay evidence and denied petitioner his constitutional right to face and cross-examine his accusers. This has reference to the admission of the written statements of two police officers, a porter at the Palace Tavern, Mark Johnson, and a waitress at the Pure Food Cafe, Ruth Belfils. The members of the civil service board are not required to be lawyers and are not in fact members of that profession, and it will be observed from section 6

of rule 8, *supra,* that in the conduct of the hearings the board is not bound by the technical rules of evidence, nor does the informality in the taking of testimony invalidate its orders or decisions. The fact that such evidence would not be received in a court of record does not, due to the provisions of this section, mean that the board exceeded its jurisdiction in receiving it. This is especially true in view of the fact that these four witnesses were on the witness stand and the petitioner had an opportunity to examine them as to the written statements as well as other matters and utilized it fully in the case of two of them. While the admission of the statements would doubtless have been irregular and improper if the proceeding had been a court trial, it did not deprive the board of its right to determine the matter and to enter an order affirming the action of the chief of police. It might be suggested also that there was evidence in addition to these four statements that would have justified the board's action and, this being true, there was no error in admitting them. *Horstmyer* v. *Trial Board of City of Sacramento,* 21 Cal. App. (2d) 533, 69 Pac. (2d) 1021.

Finding no error, the judgment of the superior court is affirmed.

LOCKWOOD, C. J., and ROSS, J., concur.