581 P.2d 262

**Charles E. BISHOP, Appellant,**

**v.**

**The LAW ENFORCEMENT MERIT SYSTEM COUNCIL, an Agency of the State of Arizona, Vernon C. Foster, Chairman thereof, Eduard A. Vitolins, Secretary thereof, Oscar H. Duarte, Member thereof, the Department of Public Safety, an Agency of the State of Arizona, Appellees.**

**No. 2 CA–CIV 2676.**

Court of Appeals of Arizona, Division 2.

April 20, 1978.

Rehearing Denied May 10, 1978.

Review Denied June 8, 1978.

McDonald & Nash by Walter B. Nash, III, Tucson, for appellant.

J. Conrad Baran, Special Counsel Arizona Dept. of Public Safety, John A. LaSota, Jr., Atty. Gen. by Richard Kamps, Asst. Atty. Gen., Phoenix, for appellees.

## OPINION

HATHAWAY, Judge.

Charles Bishop, a former undercover police officer dismissed by his employer, appellee Arizona Department of Public Safety (DPS), appeals from a judgment affirming the decision of appellee Law Enforcement Merit System Council (Council) upholding his termination. Appellant's employment with DPS was terminated by its Acting Director on September 19, 1975, for the following violations of Merit System Council Rule 8.3.03:

"(c) Misfeasance, malfeasance or nonfeasance, which shall include, but shall not be limited to:

(1) Incompetency

(2) Inefficiency

(3) Inexcusable neglect of duty

. . .

\* \* \* \* \* \*

(k) Any other failure of good behavior or acts either during or outside of duty hours which are incompatible with or inimical to the agency interest."

Following his appeal to the Council, pursuant to merit system rules, DPS filed an amended statement of charges against him alleging:

"COUNT ONE
III

That on or about July 13, 1975, Charles E. Bishop received a sample of what was believed to be marijuana from suspects; that he failed to follow the procedures set forth in Policy #34.02 for the retention and processing of evidence; and that he subsequently lost said evidence.

COUNT TWO
IV

That he failed to make a proper departmental report of the loss of the evidence set forth in Count One as required by General Order 32.01.

COUNT THREE
V

That in late 1974, he participated in the smoking of marijuana with a narcotics suspect behind the Village Inn Pizza Parlor on Speedway Boulevard in the City of Tucson.

COUNT FOUR
VI

That he failed to make a proper departmental report of the incident set forth in Count Three.

COUNT FIVE
VII

That sometime during February or March, 1975, he participated in the smoking of marijuana with narcotics suspects in the mobile home of one Harvey Cox, which is located in the City of Tucson.

COUNT SIX
VIII

That he failed to make a proper departmental report of the incident set forth in Count Five.

COUNT SEVEN
IX

That on or about July 12 or 13, 1975, he participated in the smoking of marijuana with narcotics suspects in the American Family Motel in the City of Tucson.

COUNT EIGHT
X

That he failed to make a proper departmental report of the incident set forth in Count Seven.

COUNT NINE
XI

That sometime during 1975, he participated in the smoking of marijuana with one Donna King at the mobile home of one Harvey Cox, which is located in the City of Tucson.

COUNT TEN
XII

That he failed to make a proper departmental report of the incident set forth in Count Nine."

A hearing was held on December 17, 1975, before the Council. At this time appellant admitted the truth of the factual allegations in the amended statement of charges, though not that his failure to report such incidents was improper.

When first confronted, prior to his dismissal, with charges that he had twice smoked marijuana with narcotics suspects, he claimed that he had merely been simulating smoking. However, after he submitted to a lie detector test and was told that the results indicated deception, he admitted he had smoked then and on two other occasions. At the hearing he testified that he felt, during each of these incidents, that he was being tested, that he could not effectively simulate and that he had to smoke to prove he was not a police officer and to preserve the on-going investigation.

On January 21, 1976, the Council upheld the order of termination of service. Appellant then filed, on February 19, 1976, a complaint in Pima County Superior Court for review of an administrative decision, pursuant to A.R.S. Sec. 12–901, et seq. On

October 8, 1976, the court ordered the complaint amended as proceedings pursuant to A.R.S. Sec. 28–236.[1]

Appellant, who began working for DPS in August 1969 as a highway patrolman, transferred to the liquor section of the criminal investigations division in February 1973 and one year later began working for the Tucson narcotics section. He testified that at no time was he ever instructed that it was against DPS policy for an undercover narcotics agent to smoke marijuana during the course of an investigation and he was unaware such policy existed.

A written policy prohibiting such conduct was not promulgated until after appellant's dismissal. Yet, not all DPS policies are reduced to writing. Carl Needham, chief of the criminal investigations division, and Dennis Dierking, supervisor of the Tucson narcotics section, testified that since 1969 an oral policy prohibiting smoking during undercover work, except when refusal to do so would result in bodily injury or death to the officer, had existed. If, under these exceptional circumstances, an officer must smoke, then he is to notify his superior and write a report of the incident. These witnesses expressed the well-known position of DPS to be that it is better to lose a case than to jeopardize the reputation of the department or an officer by requiring him to smoke. This policy was disseminated from Needham through the chain of command to the officers in the field. Four undercover narcotics officers also testified that the oral policy prohibiting smoking was well known, that they had been aware of it since they began working for the nar-

cotics section, and that they would "blow" a case rather than smoke with narcotics suspects.

Appellant argues on appeal that his dismissal was invalid because he never received prior notice that the conduct he engaged in could result in his dismissal. It is not feasible, because of the very nature of the employer-employee relationship here, for the Council to spell out in detail all conduct which may result in termination of DPS employees. Cf., *Civil Service Commission of City of Tucson v. Livingston,* 22 Ariz.App. 183, 525 P.2d 949 (1974).

A.R.S. Sec. 28–235(C)(3)(c) directs that the Council shall:

"Pursuant to recognized merit principles of public employment . . . Provide a plan for fair and impartial . . . separation or removal from service by . . . dismissal . . ."

Pursuant to this statutory mandate, the Council has adopted Rule 8.1.01 which provides for "removal for cause," Rule 8.3.01 which defines punitive action as including "dismissal from service," and Rule 8.3.03 which lists various types of conduct as constituting causes for punitive action. *Arizona Department of Public Safety v. Dowd,* 117 Ariz. 423, 573 P.2d 497 (App.1977).

Appellant's "removal for cause" may be upheld only if he had fair notice, express or fairly implied, that such conduct would be ground for discharge. We so held in *Civil Service Commission of City of Tucson v. Livingston,* supra, where a City of Tucson police officer challenged the action of the civil service commission in upholding his discharge. We stated:

1. A.R.S. Sec. 28–235(C) provides that the law enforcement merit system council shall:

"4. Pursuant to recognized merit principles, hear and review appeals from any order of the director of the department of public safety in connection with suspension, demotion or dismissal of a classified employee. The council's determination thereon shall be final, except upon appeal as provided in Sec. 28–236."

A.R.S. Sec. 28–236:

"A classified employee who is suspended, demoted or dismissed by the patrol superintendent, the superintendent of the department of iiquor licenses and control, or the

attorney general, for the narcotics enforcement division, after a fair hearing and review before the merit system council and confirmation of the superintendent's order, or the patrol superintendent when removed by the council, or upon confirmation of the order of the superintendent of the department of liquor licenses and control or of the order of the attorney general, for the narcotics enforcement division, may have the determination of the council reviewed upon writ of certiorari from the superior court of the county in which the employee resides. . . ."

"The pivotal question on the issue of fair notice is whether the conduct was or should have been known by him to be prohibited by the employer. As is said in *Carter v. United States,* [132 U.S.App. D.C. 303, 407 F.2d 1238] supra:

'That knowledge may, of course, rest on fair implication, even though not made express, as in the kind of job-related misbehavior that is inconsistent with proper attention to work or proper loyalty to the employment relationship.' 407 F.2d at 1246 [Footnote omitted].

This standard is an objective one. Would the reasonable police officer under the circumstances know that his conduct was prohibited?" 22 Ariz.App. at 188, 525 P.2d at 954.

Appellant answers this question in the negative. He stresses his actual lack of knowledge and his prior work in gambling investigations which did not result in disciplinary action being taken against him. He argues that his smoking of marijuana fell within the performance of his official duties and thus was not illegal.[2] We need not decide whether appellant is exempted from criminal liability. The paramount issue in this proceeding is not whether appellant is a criminal, but rather his fitness to retain his position as a police officer. *Van Gerreway v. Chicago Police Board,* 34 Ill.App.3d 511, 340 N.E.2d 28 (1975); *Keith v. Civil Service Board of City of Phoenix,* 57 Ariz. 85, 111 P.2d 57 (1941).

■ A dismissed classified employee of DPS may have an adverse decision of the Council reviewed upon writ of certiorari. A.R.S. Sec. 28–236. In an action for certiorari, the reviewing court may not weigh the evidence on which the decision was based, but may only consider whether there is any evidence showing that the inferior tribunal acted within its jurisdiction. *Arizona Department of Public Safety v. Dowd,* supra; *East Camelback Homeowners Association v. Arizona Foundation for Neurology and Psychiatry,* 18 Ariz.App. 121, 500 P.2d 906 (1972). The court looks to see whether the administrative action was arbitrary, capricious or an abuse of discretion and will only intervene where no evidence exists to support the decision. *Justice v. City of Casa Grande,* 116 Ariz. 66, 567 P.2d 1195 (1977); *Cox v. Pima County Law Enforcement Merit System Council,* 25 Ariz.App. 349, 543 P.2d 470 (1975). We have reviewed the record and conclude that there was evidence upon which the Council could have found that a reasonable police officer under the circumstances would have known that his conduct was prohibited.

■ We also reject appellant's claim that the punishment imposed was excessive. A.R.S. Sec. 28–235 and the rules enacted pursuant thereto, vest discretion in the Council, not in the courts, to determine when violation of its rules is sufficient to justify termination, as opposed to some lesser disciplinary action. *Arizona Department of Public Safety v. Dowd,* supra. It is DPS and not the courts which must justify to the public the integrity and efficiency of its operations. *Pell v. Board of Education of Union Free School District No. 1,* 34 N.Y.2d 222, 356 N.Y.S.2d 833, 313 N.E.2d 321 (1974). The determination of the penalty imposed by an administrative body will not be disturbed unless there has been an abuse of discretion. *Skelly v. State Personnel Board,* 15 Cal.3d 194, 124 Cal.Rptr. 14, 539 P.2d 774 (1975).

■ Reviewing the charges against appellant, we cannot say that the continuance of his employment could not have been detrimental to the discipline or efficiency of DPS in fulfilling its statutory law enforcement obligations. *Arizona Department of Public Safety v. Dowd,* supra. There was a rational basis for the Council's conclusion that appellant's discharge was justified by his violations of council rules. This punishment was not so disproportionate to the offense as to be shocking to one's sense of

2. A.R.S. Sec. 36–1012:
"The provisions of this article restricting the possessing and having control of narcotic drugs shall not apply to . . . public officers or their employees in the performance of their official duties requiring possession or control of narcotic drugs . . . ."

422

fairness. *Alfieri v. Murphy,* 47 A.D.2d 820, 366 N.Y.S.2d 10 (1975).

■ We do not agree with appellant that the Council erred in denying his request for access to the disciplinary proceeding records of certain named individuals. Appellant hoped to show that similar acts had not been disciplined in the past, or if they had, that the punishment was much less severe.

In the absence of some definite offer to show that there was discrimination in the penalty, the court is not compelled to consume its time in a mere fishing expedition. Moreover, there is no requirement that charges similar in nature must result in identical penalties. The Council is not bound to deal with all cases at all times in the same manner as it had dealt with some past cases that might seem comparable. *Marino v. City of Los Angeles,* 34 Cal. App.3d 461, 110 Cal.Rptr. 45 (1973).

■ Appellant maintains that the Council committed error by allowing its Chairman, Vernon Foster, to sit. Appellant objected at the hearing because Foster's son is employed by DPS as an assistant chief for the administrative division. There was testimony that he probably had a review responsibility for general orders affecting the whole department but that he would have very little to do with the establishment of policy relating to the criminal investigations division. Foster refused to disqualify himself because appellant did not set forth any specific areas in which there could be a conflict.

Appellant relies only on the relationship with the son and the son's occupation. What materiality these facts have insofar as they concern any actual bias Foster may have had against appellant personally is not pointed out nor have we been able to ascertain such from the record. There is no basis from which we could conclude that appellant was denied a fair and impartial hearing by the Council. *Arizona Department of Public Safety v. Dowd,* supra; see *State ex rel. Richey v. Neenah Police and Fire Commission,* 48 Wis.2d 575, 180 N.W.2d 743 (1970).

■ We also find no error in the Council's refusal to admit an affidavit of Terry Kennedy offered by appellant. In this affidavit, Kennedy, a former undercover narcotics officer for DPS and appellant's initial partner, stated that he was never instructed not to smoke marijuana in furtherance of an investigation. He also stated that he testified in a criminal trial that he had smoked with the defendants during the course of his investigation of them and no action was taken against him as a result of such testimony.

Kennedy did not attend the hearing before the Council because he was working that day. The Council correctly found that appellant had had ample opportunity to depose Kennedy, A.R.S. Sec. 41–1010(4), and properly refused the admission of this affidavit.

Affirmed.

RICHMOND, C. J., and HOWARD, J., concur.