923 P.2d 845

**PIMA COUNTY, Plaintiff/Appellee,**

v.

**PIMA COUNTY MERIT SYSTEM COMMISSION; Hassell Logan; Keith Langen; Robert Bassler, Defendants/Appellants.**

No. 2 CA–CV 95–0101.

Court of Appeals of Arizona, Division 2, Department B.

Jan. 31, 1996.

Review Denied Sept. 17, 1996.

Stephen D. Neely, Pima County Attorney by Mary Judge Ryan, Tucson, for Plaintiff/Appellee.

Paul Scott Simon, Tucson, for Defendants/Appellants.

---

*OPINION*

ESPINOSA, Presiding Judge.

Appellants Hassel Logan, Keith Langen, and Robert Bassler appeal from an order of the superior court vacating the decision of the Pima County Merit System Commission (Commission) to reinstate them in their positions as corrections officers following their dismissal by the Pima County Sheriff's Department (Department). The superior court found that the Commission improperly substituted its judgment on the appropriate punishment and thereby abused its discretion. We agree and affirm.

**Facts and Procedural Background**

On February 5, 1992, appellants were assigned to the intake unit at the Pima County Adult Detention Center when, at about 2:00 a.m., Lynn Grey was brought in on an outstanding probation warrant by the Tucson Police. Grey showed signs of intoxication, exhibited mood swings, and was combative. In the course of booking him, appellants Langen and Logan applied "standard pain control measures" by placing Grey in a wristlock, and wrestled him to the floor. After being joined by appellant Bassler, they stripped Grey naked, placed him underneath a metal bunk and shackled his arms and legs to it in a "trussed" position. According to the testimony of witnesses and reenactment photographs admitted by the superior court, Grey's buttocks and lower back rested on the floor beneath the bunk, while his legs, left shoulder, arms and head were suspended above the floor. His left arm was cuffed to the top side of the bunk in such a fashion that the edge of the bunk bisected his forearm. He was left in this position between 15 and 45 minutes. Staff nurses subsequently discovered that Grey's left forearm was broken and he was transferred to the hospital later that morning for treatment.

Following an internal investigation, the Department terminated appellants' employment in June 1992, citing thirteen violations of county regulations and policies, including failure to treat a prisoner in a humane manner and failure to give honest accounts of the incident. All three appealed their dismissals, and the appeals were consolidated before the Commission, which reviewed them pursuant to Pima County Merit System Rule 13.4(A)(1) and the Administrative Review Act (A.R.A.), A.R.S. §§ 12–901 to 12–914.

Between October 1992 and mid-March 1993, the Commission heard seven days of testimony from appellants and other witnesses. In a "corrected decision" issued December 17, 1993, the Commission by a two to one vote modified the Department's dismissals, reinstating all three appellants and imposing periods of suspension instead. In its findings of fact, the Commission determined that appellants had violated only Department Rule and Regulation number 5.07.IIC13 by subjecting Grey to "unnecessary restraint." [1] That rule provides:

> Employees charged with the custody of prisoners shall observe all laws and departmental rules, regulations, and procedures regarding this activity. Prisoners shall be kept securely, treated firmly and humanely, and not subject to unnecessary restraint.

The Commission also found that appellants were "left on their own without adequate support and back up from their superiors," lacked adequate safety protection from violent prisoners, and lacked adequate supervision during the incident.

Based on these findings, the Commission determined that the dismissals were "arbitrary and taken without reasonable cause and so disproportionate to the conduct as to be shocking to one's sense of fairness considering all of the facts surrounding the case." However, the Commission further concluded there was "cause for some disciplinary action" based on appellants' conduct and thus imposed the lesser penalties of suspension.

Pima County appealed the Commission's decision to the superior court pursuant to Pima County Merit System Rule 13.4(B)(16) and the A.R.A. That court vacated the Commission's decision and reinstated appellants' dismissals, finding that it was within the Sheriff's discretion to determine the conse-

---

1. An initial March 26, 1993 decision issued by the Commission stated that the violation of 5.07.-IIC13 occurred as a result of appellants having treated Grey "inhumanely." At appellants' re-

quests, this language was specifically deleted during a Commission hearing on October 26, 1993, and replaced with "unnecessary restraint" as the violation.

quences of their behavior and that the Commission had merely substituted its judgment on the subject of appropriate punishment in abuse of its discretion. Appellants challenge this ruling on appeal, contending that the court misapplied the standard for reviewing an administrative decision.

## Discussion

■ The statutory scheme governing the Merit System Commission vests primary discretion over employee disciplinary matters in the appointing authority, which consists of the county employee's immediate departmental or agency employer. A.R.S. § 11–356(A). The Commission is authorized to modify or revoke the disciplinary decisions of the employer only if its action was arbitrary or taken without reasonable cause, or the penalty imposed was "so disproportionate ... as to be shocking to a sense of fairness." *Maricopa County v. Gottsponer*, 150 Ariz. 367, 372, 723 P.2d 716, 721 (App.1986).

■ As to the arbitrariness issue, we are faced with the Commission's findings that appellants violated a departmental rule concerning the restraint of prisoners and that some discipline was appropriate. Thus, by the Commission's own determination, the Department's action was not arbitrary or taken without reasonable cause. Although appellants suggest that the Commission's contrary conclusion was based on its "rejection" of the twelve other infractions cited by the Department, the record belies such a claim. The central issue at the hearings was the treatment of Grey, and the Commission, contrary to appellants' assertions, declined to make any findings concerning the other violations.[2] The Commission could not, therefore, modify the penalty the Department imposed unless it was so disproportionate to the sustained charge as to be "shocking to a sense of fairness." *Id.; see also Pima County Sheriff's Dept. v. Smith*, 158 Ariz. 46, 760 P.2d 1095 (App.1988).

Although a number of Arizona cases have applied the principle, *see e.g., Lathrop v. Arizona Board of Chiropractic Examiners*, 182 Ariz. 172, 894 P.2d 715 (App.1995); *Pima*

*County Sheriff's Dept. v. Smith; Bishop v. Law Enforcement Merit System Council*, 119 Ariz. 417, 581 P.2d 262 (App.1978), none of them appear to delineate any useful test for determining what is or is not "shocking to one's sense of fairness." However, in *Pell v. Board of Education of Union Free School District No. 1*, 34 N.Y.2d 222, 313 N.E.2d 321, 356 N.Y.S.2d 833 (1974), the New York Court of Appeals addressed this issue in a context similar to the one at hand. After acknowledging its subjectivity and the difficulty in articulating an objective standard, the court stated:

[I]t may be ventured that a result is shocking to one's sense of fairness if the sanction imposed is so grave in its impact on the individual subjected to it that it is disproportionate to the misconduct, incompetence, failure or turpitude of the individual, or to the harm or risk of harm to the agency or institution, or to the public generally visited or threatened by the derelictions of the individuals. Additional factors would be the prospect of deterrence of the individual or of others in like situations, and therefore a reasonable prospect of recurrence of derelictions by the individual or persons similarly employed. There is also the element that the sanctions reflect the standards of society to be applied to the offense involved.

\*   \*   \*   \*   \*   \*

Paramount too, in cases of sanctions for agencies like the police, is the principle that it is the agency and not the courts which, before the public, must justify the integrity and efficiency of their operations. 34 N.Y.2d at 234–35, 313 N.E.2d at 327–28, 356 N.Y.S.2d at 842–43. The *Gottsponer* court focused on another factor; namely, whether the appellant "was treated differently from other, similarly situated employees." 150 Ariz. at 372–73, 723 P.2d at 721–22. With these guidelines in mind, we review the record on appeal to determine whether it supports "the Commission's substitution of its opinion for that of the Department regarding the mode of discipline most appropriate for [appellants]." *Id.* at 372, 723 P.2d at 721.

---

2. At the October 26, 1993 hearing, the Commission was urged by appellants to adopt specific findings relating to the other Departmental

charges for the purpose of "clarifying the record," but, by a divided vote, refused to do so.

After thoroughly reviewing the voluminous transcript of the Commission hearing and the numerous exhibits in the record, we cannot say that the dismissals are shocking. Even the undisputed evidence shows that appellants stripped Grey naked, literally tearing much of his clothing from his body, and bound him in a trussed position, all but suspended from a metal bunk, in violation of a Department rule. Grey was kept in that position for up to 45 minutes.[3] He was later taken to the hospital and treated for a broken arm. Testimony, reenactment photos, and emergency room x-rays admitted by the superior court over appellants' objections but not disputed by them,[4] strongly suggest that Grey's broken arm resulted from the position in which he was shackled to the bed frame. Moreover, there was evidence that Grey suffered additional, though less serious, injuries as the trial court noted in its amended judgment. While appellants presented mitigating facts such as provocation by Grey, lack of supervision, and high performance ratings, and while dismissal is a severe punishment, it is not so disproportionate under the circumstances to shock one's sense of fairness.

The Commission apparently was motivated to ameliorate the Department's disciplinary action by its belief that appellants "were left on their own without adequate support and back up," lacked "adequate technology to protect one's safety," had no "padded cells" for violent prisoners, and its desire to send a message to "the highest levels of administration at the Sheriff's Department ... to address these problems." Those reasons, however, are only marginally supported in the record and we find them largely collateral to the question of disproportionate discipline, not being among the kinds of relevant considerations discussed in either *Gottsponer* or *Pell.*

### Conclusion

As in *Gottsponer,* the record contradicts the Commission's finding that the Department's sanction against appellants was arbitrarily imposed. Indeed, the Commission de-

termined that some form of discipline was warranted, and dismissal was within the range of the Sheriff's permissible disciplinary action. We find no evidence, nor has the Commission cited any, to support a finding that this penalty was shockingly disproportionate to the offense. While some action short of termination may have been appropriate, as the trial court noted, it was not the Commission's prerogative, nor is it the courts', to merely substitute its opinion for that of the Department, which alone "must justify to the public the integrity and efficiency of its operations." *Bishop,* 119 Ariz. at 421, 581 P.2d at 266, citing *Pell.*

The judgment of the trial court vacating the Merit Commission's decision and reinstating the terminations imposed by the Sheriff's Department is affirmed.

DRAKE, C.J., and HATHAWAY, J., concur.

---

**3.** We note appellant Bassler's initial estimates to the Department were 45 minutes to an hour.

**4.** Appellants challenge the photographs and x-ray only on the ground that they were made "a part of the record" by the trial court but not admitted

as evidence. We find this a distinction without a difference, particularly in view of the general admissibility of such evidence and the context of the trial court's rulings.