99 P.3d 19

**PIMA COUNTY, a political subdivision of the State of Arizona, and Clarence Dupnik, Pima County Sheriff, Plaintiffs/Appellants,**

v.

**PIMA COUNTY LAW ENFORCEMENT MERIT SYSTEM COUNCIL and Georgia Brousseau, Michael Hellon, Herschella Horton, Rosemary Marquez, Paul Julien, and James Watson, in their official capacities, and acting as Pima County Law Enforcement Merit System Council, Defendants/Appellees,**

and

**Joseph Harvey, Real Party in Interest.**

No. 2 CA–CV 2004–0004.

Court of Appeals of Arizona, Division 2, Department A.

Sept. 30, 2004.

Review Granted March 22, 2005.

---

Gabroy, Rollman & Bossé, By John Gabroy, Lyle D. Aldridge, and Richard A. Brown, Tucson, for Plaintiffs/Appellants.

Corey & Kime, By Barry M. Corey and Michelle S. Michelson, Tucson, for Defendants/Appellees.

Piccarreta & Davis, P.C., By Michael L. Piccarreta and Michael Storie, Tucson, for Real Party in Interest.

*OPINION*

ECKERSTROM, J.

¶ 1 Pima County and the Pima County Sheriff, Clarence Dupnik, appeal from the superior court's denial of relief on their complaint for special action. In that complaint, Dupnik challenged the decision of the Pima County Law Enforcement Merit System Council to reinstate Deputy Sheriff Joseph Harvey, whom Dupnik had terminated, and to award him back pay. The trial court found that the Council had neither employed an unlawful standard for reviewing Dupnik's disciplinary action nor abused its discretion in applying that standard. We review the trial court's ruling *de novo.* *See M & M Auto Storage Pool, Inc. v. Chemical Waste Mgmt., Inc.,* 164 Ariz. 139, 143, 791 P.2d 665, 669 (App.1990) ("[W]e may substitute our opinion for that of the superior court because we are reviewing the same record."); *see also Ariz. Dep't of Corr. v. State Pers. Bd.,* 202 Ariz. 598, ¶ 8, 48 P.3d 1208, 1210 (App. 2002). We thus stand in the shoes of the trial court, which reviews the boundaries of the Council's legal authority *de novo, see Hamilton v. City of Mesa,* 185 Ariz. 420, 424, 916 P.2d 1136, 1140 (App.1995), but which may reverse the factual findings of the Council only if they are not supported by substantial evidence. *See Havasu Heights Ranch & Dev. Corp. v. Desert Valley Wood Prods., Inc.,* 167 Ariz. 383, 387, 807 P.2d 1119, 1123 (App.1990). The procedural history and the essential contentions of the parties are set forth below.

¶ 2 Dupnik's review of Harvey's testimony in a criminal case triggered Dupnik's decision to terminate Harvey. In that case, Harvey had conceded under oath that he had straddled and slapped a handcuffed, shackled, and wounded suspect and had done so, in part, with the intent to elicit incriminating state-

ments from the suspect. Harvey also testified that he had had another reason to slap the suspect—to keep him from losing consciousness before medical personnel arrived. Dupnik concluded from this testimony that Harvey had used an "inappropriate interview and interrogation tactic" that demonstrated "poor judgment" and that he had used "excessive ... force." After reviewing the facts of that incident, Dupnik and Assistant Chief Deputy Cramer, Dupnik's chief of operations, found unbelievable Harvey's claim that he had slapped the suspect for medical purposes.

¶ 3 In his written notice of termination, Dupnik also referred to a variety of other rule or policy infractions Harvey had committed that, in Dupnik's view, "mirror[ed] a career-long pattern of failure and/or unwillingness to comply with Department Rules and Regulations." Dupnik specifically noted an incident during which Harvey had been insubordinate by disregarding the commands of, and later menacing, a fellow officer. Dupnik also chastised Harvey for placing false information on booking forms "as a joke" while booking arrestees into jail, actions that Dupnik believed demonstrated "poor judgment" and "embarrass[ed] the Department."

¶ 4 Harvey appealed his termination to the Council, and a hearing officer conducted a lengthy evidentiary hearing. In contradiction of his testimony in the suspect's criminal trial, Harvey testified before the hearing officer that he had slapped the suspect solely in an effort to render first aid—and not to elicit an incriminating statement. Several of Harvey's colleagues who had witnessed the incident testified, in essence, that Harvey had not engaged in any inappropriate action in doing so. One testified that he had actually seen an emergency medical technician do something similar on a different occasion. In contrast, numerous law enforcement supervisors, including a retired Tucson chief of police, testified that slapping a suspect for purposes of rendering first aid is not an acceptable practice.

¶ 5 Harvey did not factually dispute that he had placed false information on booking forms and that he had physically menaced a fellow officer for giving him commands while he was off duty. However, he characterized those incidents as minor infractions. Harvey also questioned the timing of Dupnik's decision to terminate him, which did not occur until nearly two years after the slapping incident that had allegedly triggered that decision.

¶ 6 The hearing officer accepted Harvey's testimony that he had intended only to render first aid and had not intended to use force to interrogate the suspect. The hearing officer recommended that Harvey be disciplined short of termination for other policy or rule infractions mentioned in the notice of termination, but recommended no discipline for Harvey's conduct during the arrest. The Council unanimously adopted the hearing officer's recommendations and revoked Dupnik's decision to terminate Harvey. Dupnik and Pima County filed a complaint for special action in superior court. The superior court denied relief, and this appeal followed.

¶ 7 Dupnik and the County argue that the trial court erred in denying relief in their special action, contending the Council reviewed Dupnik's decision under a standard that exceeded its statutory authority. Before 1999, Pima County Law Enforcement Merit System Council Rule XIII–4(I) had provided: "If, after [a] hearing, the Council determines that the action appealed from was arbitrary or taken without reasonable cause, the order shall be revoked or modified; otherwise the order shall be affirmed." In 1999, the Council amended that rule to state:

> If, after the hearing, a majority of the Council determines that there was just cause for the disciplinary action imposed, then the order shall be affirmed. If the Council determines that there was not just cause for the disciplinary action taken either: (1) because some or all of the charges were not proven to the satisfaction of the Council; and/or (2) whether or not all of the charges were proven, the disciplinary action imposed was, in the sole discretion of the Council, too severe a penalty for the conduct proven, then the order shall be revoked or modified. The Council shall have the power to direct appropriate remedial action and shall do so after taking

into consideration just and equitable relief to the employee in the best interest of the County and the public.

Dupnik and the County argue that the Council had no authority to substitute its discretion for Dupnik's, as all parties agree the current rule allows. The Council responds that it had authority under A.R.S. § 38–1003. We agree with Dupnik that the Council exceeded its statutory authority when it applied a nondeferential standard in reviewing Dupnik's personnel decision.

¶ 8 First, however, we address the Council's arguments that (1) Pima County is not a proper party to this action, (2) if it is a proper party, it should be judicially estopped from maintaining its asserted position, and (3) Dupnik and the County are barred from bringing this action under the doctrines of res judicata and/or collateral estoppel.

■ ¶ 9 The Council contends that, because A.R.S. § 38–1004(D) expressly authorizes only a "department head" to seek review of the Council's decisions and policies, this court lacks "subject matter jurisdiction of this proceeding as it pertains to Pima County." The County has not responded to this argument other than to say it is merely a variant of the Council's res judicata argument. Although we may conclude that Pima County is not a proper party, see In re 1996 Nissan Sentra, 201 Ariz. 114, ¶ 7, 32 P.3d 39, 42 (App.2001), that conclusion would not divest us of jurisdiction over the subject matter of this action. The Council concedes that Dupnik is a proper party; therefore, all of the issues presented are properly before this court. The Council also concedes that it did not challenge the County's participation in this litigation during the trial court proceedings. Because we conclude the issue is not jurisdictional, we also conclude the Council waived its objection to Pima County's participation by failing to present the issue to the trial court. See Lake Havasu Cmty. Hosp., Inc. v. Ariz. Title Ins. & Trust Co., 141 Ariz. 363, 370, 687 P.2d 371, 378 (App.1984) (opposing party's lack of standing is not jurisdictional and may be waived if not timely raised), overruled on other grounds by Barmat v. John & Jane Doe Partners A–D, 155 Ariz. 519, 747 P.2d 1218 (1987).

■ ¶ 10 The Council's res judicata, collateral estoppel, and judicial estoppel arguments also have been raised for the first time on appeal. At oral argument, the Council maintained that it had implicitly raised the res judicata argument when it urged the trial court to abide by a prior decision of this court that it claimed resolved all relevant legal issues on the validity of the Council's nondeferential standard of review. However, nowhere in that argument do we find any mention of the defenses of res judicata or estoppel, nor did the Council there suggest that Dupnik was precluded from challenging the validity of Council Rule XIII–4, a result required if either affirmative defense applies. Thus, we conclude that the Council did not adequately raise the issues in the trial court and has waived them. See Schoenfelder v. Ariz. Bank, 165 Ariz. 79, 88, 796 P.2d 881, 890 (1990) ("As a general rule, we will not review an issue on appeal that was not argued or factually established in the trial court."); see also Hanrahan v. Sims, 20 Ariz. App. 313, 316, 512 P.2d 617, 620 (App.1973) ("[R]es judicata is an affirmative defense and must be pleaded and proved. Appellant's failure to raise such defense constituted a waiver thereof.") (citation omitted); see also Crowe v. Hickman's Egg Ranch, 202 Ariz. 113, ¶ 16, 41 P.3d 651, 654 (App.2002) ("Issues not raised below are waived.").

■ ¶ 11 Even if were to conclude otherwise, however, we are not persuaded that res judicata would bar Dupnik's challenge to the Council's actions. The Council directs us to a prior order of this court in which we perfunctorily rejected a similar challenge by Dupnik to the same rule. The Council also includes copies of the pleadings in that case and notes that Dupnik's grounds for challenging the rule at that time included a variant of the primary argument he asserts here: that the Council exceeded its authority under § 38–1003 when it discarded its previously deferential standard for reviewing the sheriff's disciplinary actions. Although the Council is correct that Dupnik's primary argument here is a species of one of the arguments he made in the prior case, our order there did not address that argument. Instead, we summarily rejected Dupnik's separate argu-

**208**

ment that the new rule inappropriately gave the Council unfettered discretion and eliminated meaningful judicial review in violation of A.R.S. § 12–910(E). Here, in contrast, we address whether the discretion provided, albeit not "unfettered," exceeds the scope of discretion authorized by the Council's enabling act.

¶ 12 We now squarely address the question of whether the Council's new standard for reviewing the sheriff's disciplinary decisions exceeds the Council's statutory authority. "Administrative agencies have no common law or inherent powers—their powers are limited by their enabling legislation." *Ariz. State Bd. of Regents v. Ariz. State Pers. Bd.*, 195 Ariz. 173, ¶ 9, 985 P.2d 1032, 1034 (1999). In interpreting enabling legislation, we must determine whether the legislature intended to permit the Council to exercise the discretion described in the current rule as interpreted by the Council. *See Lowing v. Allstate Ins. Co.*, 176 Ariz. 101, 103, 859 P.2d 724, 726 (1993) (" 'The primary principle of statutory interpretation is to determine and give effect to legislative intent.' "), *quoting Wyatt v. Wehmueller*, 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991). We look first at the statutory language, and if the intent is unclear, also consider "the policy behind the statute, and its context, subject matter, effects and consequences." *Bigelsen v. Ariz. State Bd. of Med. Exam'rs*, 175 Ariz. 86, 90, 853 P.2d 1133, 1137 (App.1993).

¶ 13 Section 38–1003 authorizes the Council to "[p]rovide a plan for fair and impartial selection, appointment, retention and . . . dismissal of all classified law enforcement officers"; to "[a]dopt rules necessary for the orderly administration of the provisions" of the statutes; and to "[h]ear and review appeals from any order of the department head in connection with suspension, demotion or dismissal of a classified law enforcement officer." In performing these tasks, however, the Council's discretion is not unlimited. Rather, the legislature specifically limited the Council's powers to those exercised "pursuant to recognized merit system principles of public employment." § 38–1003.

¶ 14 To determine whether the standard of review in Rule XIII–4 violates "rec-

ognized merit system principles," § 38–1003, we must determine what the legislature intended by that phrase. In doing so, we find guidance in the principles the legislature later adopted when it enacted procedural rules for the state personnel board. Like the Council, the state personnel board is charged with hearing and reviewing appeals of certain state employees. A.R.S. § 41–782(A). It is also authorized to "adopt rules it deems necessary for the administration of hearings and the review of appeals and complaints," § 41–782(C), and its decisions are final, subject to judicial review, A.R.S. § 41–785(F) and (G). But the legislature expressly provided that the state personnel board may "reverse an agency's action on appeal only if the board finds the action to be arbitrary, capricious or otherwise contrary to law," § 41–785(C), and it "may reduce the disciplinary penalty chosen by an agency only if the board finds the penalty to be excessive or made for reasons that are arbitrary, capricious or otherwise contrary to law," § 41–785(D). These provisions indicate the legislature has "recognized" that merit system review boards should assess the discretionary personnel decisions of the employing agency under a deferential standard of review. Although § 41–785(F) and (G) were not adopted until three years after § 38–1003 was enacted, we find no evidence that, in designing its own merit system, the legislature intended to depart from pre-existing merit system principles.

¶ 15 The Council suggested during oral argument that the phrase "recognized merit system principles of public employment" refers only to the most basic features of a merit review system—such as the right to appeal the employer's disciplinary action and have an independent body determine the validity of that action. But such a reading would render the phrase wholly unnecessary because the remainder of the statute expressly describes those features.

¶ 16 A review of Arizona case law supports our conclusion that "recognized merit system principles" require a deferential standard of review. Arizona courts have repeatedly reversed merit system review board decisions when those decisions have modified personnel decisions in the absence of a showing of

arbitrary or capricious action by the employer. *Ariz. Dep't of Corr.*, 202 Ariz. 598, ¶¶ 15–16, 48 P.3d at 1211; *Pima County v. Pima County Merit Sys. Comm'n*, 186 Ariz. 379, 382, 923 P.2d 845, 848 (App.1996) ("*Logan*"); *Maricopa County v. Gottsponer*, 150 Ariz. 367, 372–73, 723 P.2d 716, 721–22 (App.1986). At the outset, we agree with the Council that these cases are not dispositive of the issue before us because they addressed whether a deferential standard had been correctly applied—not whether a merit review board is statutorily required to employ a deferential standard. However, in overturning the findings of three separate merit system review boards for exceeding the deferential standard of review, the courts in those cases suggested that a deferential standard, like that in § 41–785, has been a recognized, and vigorously enforced, merit system principle in Arizona.

¶ 17 Moreover, Arizona courts have held that the statutory scheme for merit review systems vests "primary discretion" over disciplinary matters in the agency employer. *Logan*, 186 Ariz. at 381, 923 P.2d at 847; *see also Gottsponer*, 150 Ariz. at 372–73, 723 P.2d at 721–22. But the nondeferential standard of review authorized by the Council's rule gives the Council primary discretion over disciplinary decisions and renders the agency employer's initial decision merely advisory.

¶ 18 A deferential standard of review is also more consistent with the broader purpose of the enabling legislation. In establishing a personnel board for government employees based on merit principles, the legislature evidenced a broad goal of protecting those employees from being terminated for arbitrary or improper personal factors unrelated to the merits of their job performance. In *Hamilton*, 185 Ariz. at 424, 916 P.2d at 1140, Division One of our court observed that the enabling legislation for law enforcement merit councils was designed

> to establish for law enforcement officers and law enforcement agencies in counties, cities and towns of the state of Arizona … a mutually beneficial system of personnel administration based on merit principles governing the appointment, promotion, lay off and removal of law enforcement officers

within the counties, cities and towns of the state.

The court explained that "[a] merit system has long since been defined" to require that removal of an employee from a position "be based only on unfitness for the work for one reason or another, and not upon personal considerations." *Id.* The court concluded that such a system requires " '(a) specific reasons for removal, and (b) a reasonable hearing before some designated and proper authority as to whether the party whose removal [i]s sought [falls] within the reasons for removal set forth in the regulations established by the board.' " *Id.* at 424–25, 916 P.2d at 1140–41, *quoting Welch v. State Bd. of Soc. Sec. & Welfare*, 53 Ariz. 167, 173–74, 87 P.2d 109, 112 (1939).

¶ 19 In short, the legislature established merit review boards to assure that state agencies would employ the correct merit-based criteria in making personnel decisions. No language in that legislation suggests any intent to create a mechanism by which a politically appointed lay commission may second-guess the specific personnel judgments of an agency when that agency has applied the correct merit-based criteria. During oral argument, the Council could direct us to no Arizona case or other authority adopting a nondeferential standard of review similar to Rule XIII–4. As mentioned above, our courts have described the core role of a review board in much more limited terms—to ascertain that the reasons the agency gives for the personnel decision fall within the appropriate fitness-based grounds for agency personnel action.

¶ 20 In contrast, Rule XIII–4 gives the Council the power to not only determine whether the reasons for the disciplinary action fall within the appropriate criteria but also to independently weigh the facts proffered in support of the action and to make independent philosophical judgments about what constitutes unfitness for work. In this case, for example, the hearing officer rejected the conclusion of both Dupnik and his chief of operations that Harvey's claim that he had slapped the suspect for medical purposes was not credible. The hearing officer found that Harvey had not slapped the sus-

pect for the purpose of eliciting incriminating statements—notwithstanding Harvey's testimony at the suspect's trial in which Harvey had stated precisely that. The hearing officer further rejected Dupnik's implied conclusions that the insubordination incident and the booking form "jokes" were serious infractions. The hearing officer minimized the gravity of the latter even though Dupnik had specifically noted that the booking forms "are frequently relied upon in an emergency to contact family" and that "Corrections Staff, other officers, and prosecutors frequently rely" on the information to do their jobs. Finally, the hearing officer suggested that Dupnik could not appropriately base his decision to remove Harvey on the potential costs of defending civil claims against the department arising from Harvey's future conduct.

¶ 21 A sheriff is an elected official holding a constitutionally created office. Ariz. Const. art. XII, § 3. A sheriff alone " 'must justify to the public the integrity and efficiency of [the office's] operations," ' including the conduct of its deputies. *Logan*, 186 Ariz. at 382, 923 P.2d at 848, *quoting Bishop v. Law Enforcement Merit Sys. Council*, 119 Ariz. 417, 421, 581 P.2d 262, 266 (App.1978); *see also McCutchen v. Hill*, 147 Ariz. 401, 404, 710 P.2d 1056, 1059 (1985). This suggests that a sheriff's decisions on the limits of acceptable law enforcement job performance should be considered as more than merely advisory by the Council. We also question whether lay council members, who need not have any law enforcement background, have the necessary wisdom to dictate sheriff's department policies and procedures. Under Rule XIII–4(I), they may do so under the guise of reviewing personnel decisions—as they have done here. *Cf. Logan*, 186 Ariz. at 382, 923 P.2d at 848 (merit system commission motivated by desire to "send a message" to department administration to address problems of inadequate technology and support; court found such considerations irrelevant to whether department had arbitrarily or capriciously disciplined employees). If the legislature had intended to grant the Council such far-reach-

ing powers, it would specifically have done so.

¶ 22 Because the Council's powers are expressly limited to those consistent with "recognized merit system principles," § 38–1003, because the nondeferential standard of review in Rule XIII–4 violates those principles, and because we find no other evidence that the legislature intended to grant the Council the power to substitute its judgment for that of a duly elected law enforcement department head, we conclude that the Council exceeded its authority in reviewing Dupnik's personnel decision under the standard in Rule XIII–4.

¶ 23 Harvey asks us to affirm the trial court's denial of special action relief even if we conclude, as we have, that the Council employed an erroneous standard of review. Specifically, Harvey asserts that the record of the hearing contains "substantial evidence" from which the Council could have concluded that Dupnik had acted arbitrarily or capriciously in terminating Harvey. *See Gottsponer*, 150 Ariz. at 372, 723 P.2d at 721 (observing that deferential review does not entitle reviewing body to weigh evidence but only to assess whether substantial evidence supports agency's action).

¶ 24 But the Council did not assess whether Dupnik had marshaled "substantial evidence" to support his disciplinary action. Rather, it adopted the hearing officer's factual findings and concluded that Dupnik had "failed to carry the burden of proving, by a preponderance of the evidence, facts necessary to establish that there was just cause for the disciplinary action imposed." Under an appropriate standard of review, Dupnik carried no such burden.[1] *See id.* Although the Council also found that the disciplinary action imposed was "shocking to one's sense of fairness"—a finding that incorporates a deferential standard for reviewing the severity of punishment, *see id.*—it based that finding on "the totality of the facts and circumstances actually proved in this case." Thus, the Council's conclusion on the propriety of

---

1. The record suggests the Council might have been compelled to accept Dupnik's most pivotal factual conclusion had it employed the correct standard. As noted, Dupnik arguably possessed

a substantial basis for concluding that Harvey had slapped the wounded suspect to secure an incriminating statement—Harvey's own sworn testimony that conceded that fact.

the punishment was also infected by the erroneous standard it employed in reviewing Dupnik's factual presentation. Because the Council anchored its decision in the hearing officer's factual conclusions, and because those conclusions arose from an erroneous standard for assessing the evidence presented,[2] we decline to speculate whether the Council would have reached the same conclusion had it employed the correct standard. Therefore, we reverse the trial court's denial of special action relief and remand the case for further proceedings consistent with this decision.

HOWARD, P.J. and BRAMMER, J., concurring.

---

**2.** In conformity with Rule XIII–4, the hearing officer independently weighed the evidence without any deference to Dupnik's own factual conclusions. *See id.* (disciplinary charges must be proved "to the satisfaction of the Council").